UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER J. SMITH,

    Plaintiff,

    v.                                    Case No. 12-C-0859

ENCORE CAPITAL GROUP INC.,
MIDLAND FUNDING LLC,
MIDLAND CREDIT MANAGEMENT INC.,

    Defendants.

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS (DOC. 20)

Christopher Smith brings this action seeking to recover damages from Encore Capital Group Inc., Midland Funding LLC., and Midland Credit Management Inc. ("MCM") Smith claims that the defendants are debt collectors and violated numerous provisions of the Fair Credit Reporting Act ("FCRA") along with the Fair Debt Collection Practices Act ("FDCPA"). Defendants are asking the court to dismiss the action for failure of the Second Amended Complaint to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). As discussed below, the motion will be granted in part and denied in part.

RULE 12(b)(6) STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). However, enough facts must be set forth in the

complaint to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); S*t. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

Rule 12(b)(6) requires a plaintiff to clear two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in sufficient detail to give a defendant fair notice of the claim and the grounds on which it rests. *Id.* Although specific facts are not necessary, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. V. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Second, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra Health Servs.*, 496 F.3d at 776 (citing *Bell Atl.*, 550 U.S. at 555-56, 569 n.14). If, even assuming all of a plaintiff's facts are accurate, he has no legal claim, the case should be dismissed. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

A complaint "'may not be amended by the briefs in opposition to a motion to dismiss.'" *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). However, exhibits to a pleading are part of the pleading, Fed. R. Civ. P. 10(c), and consideration of such documents does not convert a motion to dismiss into a motion for summary judgment, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

When considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Further, because Smith represents himself the court must liberally construe his allegations, no matter how inartfully drafted. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, "pro se litigants are not entitled to a general dispensation from the rules of procedure." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994).

## ALLEGATIONS

A. Allegations in the Second Amended Complaint

According to the Second Amended Complaint, which is the operative pleading, defendants Encore Capital Group, Inc., Midland Funding LLC, and Midland Credit Management Inc. ("MCM") operate together in the debt buying and debt collection business. (Doc. 15, ¶¶ 10-12.)

Smith received a letter from MCM dated February 15, 2012. (Doc. 15 ¶ 15, Ex. 2.) The letter said Midland Funding had recently purchased Smith's "CIT BANK account, previously serviced by, or on behalf of, Dell Financial Services L.L.C.," and MCM, a debt collector, had become the servicer of the obligation. (Doc. 15, Ex. 2 at 1.) MCM offered Smith a discount of ten percent off Smith's debt if it received payment by March 31, 2012. (Doc. 15, Ex. 2 at 1.) The letter added that if such payment was made MCM would notify credit bureaus that the debt was paid in full and would immediately stop all recovery activity. (Doc. 15, Ex. 2 at 1.) The second page of the letter included a statement that unless Smith notified MCM within thirty days that he disputed the validity of the debt or any

3

portion thereof, MCM would assume the debt to be valid.  Smith was told that if he notified MCM in writing within thirty days that the debt was disputed, MCM would obtain verification of the debt and would mail him such verification and that, if Smith so requested in writing within thirty days, MCM would provide the name and address of the original creditor. Further, the letter advised that as of February 15, 2012, Smith owed $778.27 but if he did not accept the offer to settle the account by March 31, 2012, the amount he owed "may be greater because of interest, late charges, and other charges that may vary from day to day."  (Doc. 15, Ex. 2 at 2.)  Smith was warned "that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."  (Doc. 15, Ex. 2 at 2.)

  Smith alleges that this letter contained an "implied threat to damage [his] credit worthiness in an attempt to coerce [him] into accepting MCM's offer to settle an alleged debt."  (Doc. 15, ¶ 16.)  On March 6, 2012, Smith sent MCM a letter disputing the debt. (Doc. 15 ¶ 17.)  MCM then responded with a letter dated April 2, 2012, stating that in accordance with Smith's request, "enclosed are documents for the above-referenced account."  (Doc. 15, Ex. 4 at 2.)  The letter indicated that MCM was "requesting an immediate payment of balance in full.  Upon receipt of the payment and payment clearing the bank, we will report a 'paid' status on your credit report."  (Doc. 15, Ex. 4 at 2.) Enclosed with the letter was an itemized statement with the heading "Dell Financial Services, L.L.C. Customer Account Information," which set forth the customer name of "Christopher Smith" in Cudahy, Wisconsin; the balance as of May 10, 2009; orders; transactions; and an account balance history summary.  (Doc. 15, Ex. 4 at 4-6.)  At the bottom of each page of the statement is the following language:  "Data printed by Midland

4

Credit Management, Inc. from electronic records created, maintained, and provided by Dell Financial Services, L.L.C." (Doc. 15, Ex. 4 at 4-6.)

Smith charges that this letter "contained no signed verification or accounting of the alleged account or copy of any signed contract or agreement." (Doc. 15, ¶ 19.) Further, "MCM did not obtain anything from a bona fide original creditor pursuant to Smith's demand that MCM validate the alleged debt." (Pl.'s 2d Am. Compl. ¶ 21.)

Additionally, Smith alleges that Midland Funding has been reporting "inaccurate information" to the three credit reporting agencies (TransUnion, CSC Credit Services/Equifax, and Experian) since at least March 30, 2012, "in an attempt to coerce Smith to pay money to MCM." (Doc. 15, ¶ 22.) According to Smith, he disputed the inaccurate information provided by Midland Funding to all three credit reporting agencies. (Doc. 15, ¶¶ 24, 25.) The three agencies investigated by contacting Midland Funding, and thereafter, communicated to Smith that Midland Funding had verified the account as belonging to Smith. (Doc. 15, ¶¶ 26, 27.) CSC Credit Services, for instance, stated on June 4, 2012, that the item on Smith's report belonged to him from information "provided from the original source" and referred additional questions about the item to MCM. (Doc. 15, Ex. 6.)

MCM obtained Smith's consumer report from TransUnion on April 8, 2012, as well as July 11, 2012, without a permissible purpose. (Doc. 15, ¶ 23.) Afterward, on July 26, 2012, Smith phoned Encore and asked to speak to corporate counsel in an attempt to settle his claims, "but Encore's counsel was heard to say that Smith would need to 'file suit.'" (Doc. 15, ¶ 28.)

5

Smith submits that defendants' conduct violated two provisions of the FCRA and eight provisions of the FDCPA. (Doc. 15 at 6-9.[1]) He asserts that he is a "consumer" as defined in 15 U.S.C. §§ 1681a and 1692a, and each defendant is a "debt collector" as defined in 15 U.S.C. § 1692a. (Doc. 15, ¶¶ 4-7.) In addition, Smith maintains that Midland Funding is a "furnisher of information" for purposes of 15 U.S.C. § 1681s-2 and that MCM is "user of information" for purposes of 15 U.S.C. § 1681m. (Doc. 15, ¶¶ 6-7.)

B.  Allegations in Smith's Brief in Opposition to the Motion to Dismiss

As one argument in support of their motion to dismiss, defendants contend that the Second Amended Complaint suffers from pleading defects and is comprised of unsupported legal conclusions. Smith's response elaborates on the claims in his pleading. In reply, defendants contend that Smith's response brief tries to expand the allegations in the Second Amended Complaint and that despite Smith's pro se status the court should not consider such allegations as they were not included in the Second Amended Complaint. (*Id.* at 2.)

After due consideration of the parties' arguments, the court finds that Smith's response to the defendants' motion to dismiss does not contain new claims. Instead, it elaborates the claims made in the Second Amended Complaint. Hence, they warrant consideration in assessing the motion to dismiss.

---

[1] Smith's Second Amended Complaint labels his claims as "counts" 1 through 49. His counting asserts a separate count for each allegedly willful versus negligent FCRA violation caused by each of the two credit reports obtained by MCM (four counts), apparently eighteen instances of willful and eighteen instances of negligent inaccurate reporting under the FCRA (thirty-six counts), and nine unspecified FDCPA violations under eight FDCPA statutory provisions. However, Smith grouped his counts into five categories, which is how defendants recharacterize them. The court discusses the counts according to the statutory provisions at issue.

6

DISCUSSION

A.  FCRA Claims

The purpose of the FCRA is to enforce accuracy and fairness of credit reporting among consumer reporting agencies.  15 U.S.C. § 1681.

   1.   Counts 1-4:  15 U.S.C. § 1681b(f)

In counts 1 through 4 Smith asserts that MCM willfully or negligently violated 15 U.S.C. § 1681b(f) by obtaining Smith's consumer credit report from TransUnion on April 8, 2012, and July 11, 2012, without a permissible purpose.  (Doc. 15 at 6-7.)

A consumer reporting agency must have a permissible purpose when it furnishes a consumer report.  § 1681b(a).  A reporting agency may furnish a consumer report to a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . collection of an account of, the consumer."  § 1681b(a)(3)(A).  In other words, obtaining a person's consumer report in the course of attempting to collect the persons's debt is considered a permissible purpose under the FCRA.  *Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 41-42 (7th Cir. 2009); *Trinh v. Weltman, Weinberg & Reis Co.*, No. 3:12cv379, 2012 WL 5824799, at *2-*3 (N.D. Ind. Nov. 14, 2012); *Pyle v. First Nat'l Collection Bureau*, No. 1:12-cv-00288-AWI-SKO, 2012 WL 1413970, at *2-*3 (E.D. Cal. Apr. 23, 2012).  Hence, Smith's FCRA claims fail.

There are two reasons Smith may not proceed on these claims.  First, this statutory provision does not govern debt collectors, but, rather, consumer reporting agencies like TransUnion.  Second, the Second Amended Complaint and exhibits show that MCM had a permissible purpose in obtaining consumer reports because it was collecting a debt.

7

Although Smith contends that MCM had no permissible purpose when it obtained his consumer report (Doc. 15, ¶¶ 37, 41), other allegations in the Second Amended Complaint and its attachments must be considered. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (stating that where the allegations of a pleading are inconsistent with a document attached to the pleading as an exhibit, the terms of the latter, fairly construed, prevail). Other parts of the Second Amended Complaint assert that MCM was a debt collector (Doc. 15, ¶ 7) and state or show that MCM sent debt collection correspondence to Smith (Doc. 15, ¶¶ 15, 16, 19, Exs. 2, 4). Accordingly, counts 1-4 must be dismissed.

> 2. Counts 5-40: 15 U.S.C. § 1681s-2(b)

Counts 5 though 40, assert that Midland Funding willfully or negligently violated 15 U.S.C. § 1681s-2(b) "by reporting inaccurate information to Trans Union, Experian, and Equifax/CSC Credit Information Services even after notification that the information was inaccurate, and is, in fact, inaccurate." (Doc. 15, ¶¶ 45, 49.)

Section 1681s-2 governs the responsibilities of those who furnish information to consumer reporting agencies and the duties of those who furnish information upon notice of dispute:

> When a consumer reporting agency notifies a furnisher of a dispute with regard to an account, the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information.

8

*Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). In addition, pursuant to § 1681s-2(b)(1)(E), if the disputed information is found to be inaccurate, the information must be modified, deleted, or permanently blocked from being reported.

According to the Second Amended Complaint, Midland Funding is a "furnisher" of information for purposes of this provision. (Doc. 15, ¶¶ 44, 48.) Smith alleges that Midland Funding willfully or negligently violated this provision by reporting inaccurate information to TransUnion, Experian, and Equifax. (Doc. 15, ¶¶ 45, 49). Smith elaborates on this claim in his response to defendants' motion to dismiss, contending the Midland Funding verified inaccurate information to several credit reporting agencies even after Smith notified defendant that it was inaccurate. (Doc. 21 at 7-8.)

In accordance with his request, CSC Credit Services reinvestigated the debt with MCM and verified that the debt belonged to Smith. (Doc. 15 Ex. 6.) CSC Credit Services stated in its letter that additional information was provided from the original source regarding the debt but that questions should be directed to MCM, suggesting that it had contacted MCM regarding Smith's dispute. (*See id.*) Smith asserts that he disputed the debt with the other two credit reporting agencies as well, which investigated by contacting Midland. But Midland apparently confirmed the debt. (*See* Doc. 15, ¶¶ 24-27.)

Smith maintains that the debt information is inaccurate, that defendant Midland Funding knowingly reported inaccurate information to credit reporting agencies following the dispute that he reported to the agencies, and that the inaccurate information was then

9

relayed to MCM.² (Doc. 15, ¶ 22.) Such a claim is plausible. That MCM printed the statement from Dell Financial and forwarded that statement to the credit bureaus does not mean that Midland Funding actually reinvestigated the dispute. If Smith's dispute that was brought to the attention of the credit reporting agencies indicated that the debt was paid in full by March 2012, the printing of a Dell Financial statement showing a balance as of May 10, 2009, or May 31, 2011, would not establish that a sufficient investigation was conducted, as it does not report any information regarding any debt after May 31, 2011. If Smith told the credit reporting agencies that the debt had been discharged in bankruptcy, the statement from Dell Financial fails to prove that defendants investigated that information.

The court must take as true Smith's allegation that the information Midland Funding provided to the credit bureaus regarding the debt is incorrect. As such, Smith's allegation that defendant Midland Funding reported inaccurate information after notification of the inaccuracy states a claim under this provision and should not be dismissed.³

It is unclear how Smith has calculated the existence of thirty-six counts. But the number of instances of failing to reinvestigate can be determined in discovery.

---

² Smith cannot maintain a private cause of action for reporting inaccurate information under 15 U.S.C. § 1681s-2(a) based on the disputes he provided to MCM. Instead, the only actionable violation comes from a failure to investigate following a dispute reported by a credit reporting agency. *See Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 777-78 (D. Ariz. 2012) (stating that a furnisher's obligation to conduct a reinvestigation is triggered only when the consumer submits a notice of dispute to the credit reporting agency and the agency notifies the furnisher); *Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1194 (N.D. Cal. 2011) (stating that notice of a dispute received directly from the consumer does not trigger a furnisher's duty under § 1681s-2(b) and that a consumer may sue a furnisher under this provision only if the person first disputes the debt with the credit reporting agency and the agency then notifies the furnisher).

³ While the Second Amended Complaint would have been more complete if Smith had included details about his dispute of the debt, the federal rules still describe notice pleading, and the pleading here provides enough information for defendants to research their records and find the credit reporting agencies' notifications of the dispute.

B.   FDCPA Claims

When Congress enacted the FDCPA, it recognized that many debt collectors were using abusive, deceptive, and unfair debt collection practices. 15 U.S.C. § 1692. Congress passed the FDCPA to promote the dissemination of truthful information and reduce abusive methods of debt collection. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 643 (7th Cir. 2009). When assessing an FDCPA claim, the court must view a communication through the eyes of an unsophisticated debtor. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997); *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). This standard protects uninformed consumers but also incorporates an objective element of reasonableness. *Gammon*, 27 F.3d at 1257.

Smith asserts that there are nine counts of FDCPA violations by each defendant, but his counting method is unclear. As Smith points to eight statutory provisions as supporting his claims, the court will address each provision rather than "counts 41-49." Smith asserts that all of the defendants' "aforementioned conduct," i.e., the conduct set forth in earlier portions of the Second Amended Complaint, violated the FDCPA. But he provides no express tie between specific conduct and specific statutory provisions. Because Smith represents himself, the court will not fault him for the lack of clarity, especially if he elaborated on these allegations in his opposition brief.

1.   15 U.S.C. § 1692e

The introductory line of § 1692e prohibits debt collectors from using false, deceptive, or misleading representations or means in connection with the collection of any debt. The statute then sets forth sixteen examples of violative conduct, but the list is not exhaustive. The provision applies even when a false representation is unintentional. *Turner v. J.V.D.B.*

11

*& Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The representation does not have to be deliberate, reckless, or negligent to trigger liability. *See Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007).

Smith elaborates on this allegation in his opposition brief by saying that "defendants falsely, deceptively, or misleadingly represented to [him] that they purchased a debt owed by [him]." (Doc. 21 at 4.) He has disputed the debt, and his pleading can be read to assert that he does not owe it. Therefore, it is plausible that the representations in both letters from MCM—that Midland Funding purchased an account with an amount due from Smith and that Smith owes a balance—are false.

2. 15 U.S.C. § 1692e(2)(A)

Section 1692e(2)(A) sets forth one example of a false, deceptive, or misleading representation: "[t]he false representation of—(A) the character, amount, or legal status of any debt." Smith contends in his pleading that defendants violated this provision (Doc. 15, ¶ 51) and elaborates in his response to the motion to dismiss that defendants "falsely represented to [him] that they purchased a debt owed by [him]" (Doc. 21 at 4-5) and that the debt is "non-existent" (Doc. 21 at 2). Throughout his Second Amended Complaint, Smith refers to the debt as "alleged." (*See id.* ¶¶ 16-17, 19, 21-22, 33.)

Defendants' representation to Smith that they purchased the debt did not violate § 1692e(2)(A) because it does not concern the character, amount, or legal status of the debt. However, the representation of the amount of the debt and that Smith owes the debt could be false, as the debt was "non-existent." The pleadings could be read to assert that defendants' representations as to the character, amount, and legal status of the debt are untrue. As such, the claim survives the motion to dismiss.

12

3. 15 U.S.C. § 1692e(8)

Section 1692e(8) provides that a debt collector may not communicate or threaten to communicate to any person credit information that is known or should be known to be false, "including the failure to communicate that a disputed debt is disputed." If a debtor disputes the debt, "a debt collector cannot communicate the debtor consumer's credit information to others without disclosing the dispute." *Hooks v. Forman, Holt, Eliades, & Ravin, LLC*, 717 F.3d 282, 285 (2nd Cir. 2013). The section applies even when a false representation is unintentional. *Turner*, 330 F.3d at 995.

Smith claims that the February 15, 2012, letter he received from MCM contained an implied threat to damage his credit record to coerce him to accept its offer. (Doc. 15, ¶ 16.) According to Smith, the statement, "'[y]ou are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligations,'" is an implied threat. (*See* Doc. 15, ¶ 16.) Further, Smith maintains that defendants have been spreading "inaccurate information" regarding his "alleged debt." (*See id.* ¶¶ 22, 24-26, 31, 45, 49.)

Section 1692e(8) prohibits threats to communicate information known or that should be known to be false. Regardless of whether the statement in the February 15, 2012, letter was an implied threat, Smith's pleading does not support a claim that as of that date defendants knew or should have known that their information regarding a debt owed by him was false. Smith fails to identify any reasons, prior to that date, the defendants would have known of the falsity of the information regarding the debt. Therefore, that claim will be dismissed.

13

However, once Smith sent defendants his dispute letter, it is plausible that defendants then knew or should have known that the information was false, yet Midland communicated the false information to the credit bureaus. As such, assuming the information regarding the debt was in fact inaccurate and was communicated to three credit reporting agencies subsequent to Smith's dispute letter, Smith has stated a claim under § 1692e(8). Hence, this claim will not be dismissed.

4.   15 U.S.C. § 1692e(10)

Section 1692e(10) prohibits the use of false representations or deceptive means to collect or attempt to collect a debt or to obtain information regarding a consumer. In response to the motion to dismiss, Smith contends that "[d]efendants used false representation or deceptive means to collect or attempt to collect a debt alleged to be owed by the Plaintiff." (Doc. 21 at 5.) This statement is akin to a legal conclusion as it repeats the language set forth in the statute. Therefore, no additional claim under § 1692e(10) will continue.

5.   15 U.S.C. § 1692e(12)

Section 1692e(12) bans "the false representation or implication that accounts have been turned over to innocent purchasers for value." No violation of § 1692e(12) occurs where the record clearly indicates that the relationship between the two parties was merely that of creditor and debt collector. *Parish v. Frazier*, 195 F.3d 761, 765 (5th Cir. 1999).

Smith elaborates on this claim in his response to the motion to dismiss, contending that "[d]efendants falsely represented to [him] that they purchased a debt owed by [him]." (Doc. 21 at 5.) Defendants wrote in their February 15 letter that they "purchased" Smith's account from "CIT BANK" (*See* Doc. 15 Ex. 2.), suggesting not a creditor/debt collector

14

relationship but rather a purchase for value. Further, Smith contends that this representation was false. (Doc. 21 at 5). If the representation was false, MCM, through its letter, may have violated this statutory provision and the claim may continue.

However, in addition, Smith claims that defendants did not purchase the debt from a bona fide original creditor. (Doc. 15, ¶ 33.) On the other hand, section 1692e(12) does not appear to bar successive purchases of a debt. Whether CIT Bank was the original creditor appears to have no legal effect. Thus, any claim related to the original creditor issue will be dismissed.

      6.      15 U.S.C. § 1692f

Section 1692f provides that a debt collector cannot use unfair or unconscionable means to collect or attempt to collect a debt. Similar to § 1692e, § 1692f contains a general introductory clause followed by several nonexclusive examples of violative conduct. A debt collector who "complies with the provisions of the FDCPA cannot be said to have used unfair or unconscionable means to collect a debt under section 1692f." *Jang*, 122 F.3d at 484.

In his Second Amended Complaint, Smith fails to identify any unconscionable or unfair means used by defendants. (*See* Doc. 15, ¶ 51.) However, his allegations include that the April 2, 2012, collection letter failed to include a signed verification or accounting of the alleged account and failed to include a signed contract or agreement. (Doc. 15, ¶ 19.) And he elaborates in response to the motion to dismiss: that defendants violated this provision because "[p]laintiff is not in receipt of any document that verifies an agreement with [d]efendants." (Doc. 21 at 6.)

15

Smith's allegations regarding this claim are not plausible. He points to no statute or caselaw indicating that verification of a debt must be signed or accompanied by signed contracts.

> [V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). In *Recker v. Central Collection Bureau, Inc.*, No. 1:04-CV-2037-WTL-DFH, 2005 WL 2654222, at *2 (S.D. Ind. Oct. 17, 2005), the court found that computerized printouts or itemized statements can provide sufficient verification if the document informs the consumer of the debt amount, services or items provided, and the dates the debts were incurred. *See also Clark v. Capital Cred. & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (finding that documentary evidence in form of itemized statement was sufficient to verify debt); *Duensing v. Citibank (S.D.) N.A.*, No. 2:11-CV-387-TLS, 2012 WL 3108878, at *10 (N.D. Ind. July 31, 2012) (finding that sworn statement is not required). The copy of the Dell Financial statement sent to Smith meets these requirements; a signed contract in addition was not required. And compliance with FDCPA provisions means that the defendants' actions were not unfair or unconscionable.

Additionally, Smith does not identify any law indicating that the owner of a debt must have a contract in privity with the debtor. Such a requirement would prevent the purchase of debts for value, which § 1692e(12) appears to approve. Thus, Smith's § 1692f claim will be dismissed.

16

Case 2:12-cv-00859-CNC   Filed 08/23/13   Page 16 of 19   Document 24

7. 15 U.S.C. § 1692f(1)

Similarly, Smith's § 1692f(1) claim must be dismissed. Section 1692f(1) prohibits, as unfair or unconscionable means to collect a debt, the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Smith alleges that the collection notice he received failed to include a "signed verification or accounting of the alleged account or copy of any signed contract or agreement." (Doc. 15, ¶¶ 19, 51.) Again, he says in his brief that he "is not in receipt of any document that verifies an agreement with [d]efendants." (Doc. 21 at 6.) These allegations fail to state a claim. The statute concerns an agreement between a debtor and an original creditor not a debtor and a debt collector. Nothing in the statute requires privity between a consumer and a debt collector or owner of debt. That no agreement exists between MCM or Midland Funding and Smith does not suggest that an original agreement between a creditor and Smith failed to provide for interest or late charges. Further, the letter of February 15, 2012, did not actually state that Smith owed interest or late charges. Instead, it stated only that if Smith did not accept the offer to settle the account, the amount he owed "may" increase due to interest or late charges. (Doc. 15 Ex. 2 at 2.)

Thus, this claim, too, will be dismissed.

8. 15 U.S.C. § 1692g(b)

In the initial communication with a consumer or within five days after that initial communication a debt collector must provide a statement that within thirty days the consumer can dispute the debt plus a statement that if the consumer disputes the debt in

17

writing within thirty days the debt collector will obtain verification of the debt and mail such verification to the consumer. 15 U.S.C. § 1692g(a), (a)(4). Under § 1692g(b), if the debtor disputes the debt in writing within thirty days, the debt collector "shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." § 1692g(b); *see Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

Smith argues that defendants did not cease collection of the debt before they provided him with verification of the debt, in violation of § 1692g(b). (Doc. 21 at 7.) Smith disputed the alleged debt by written letter mailed March 6, 2012. (Doc. 15, ¶ 17.) Defendants responded with a letter mailed April 2, 2012, verifying the debt. (Doc. 15, ¶ 18.) Smith alleges that between those dates defendants contacted the three credit reporting agencies regarding his alleged debt. (Doc. 15, ¶ 22.)

At least one other court has found (in a case against MCM no less) that credit reporting constitutes collection of a debt. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1034-36 (D. Minn. 2010), *aff'd*, 413 F. App'x 925 (8th Cir. 2011). Thus, Smith has adequately alleged that defendants violated § 1692g(b) by failing to cease collection activities before sending Smith verification of the debt on April 2, 2012. Accordingly, the court will not dismiss this claim.

## CONCLUSION

Therefore,

IT IS ORDERED that defendants' motion to dismiss (Doc. 2) is granted as to claims under §§ 1681b(f) (counts 1-4), 1692e(8) (in part), 1692e(12) (in part), 1692f, and 1692f(1)

18

and denied as to claims under §§ 1681s-2(b) (counts 5-40), 1692e, 1692e(2)(A), 1692e(8) (in part), 1692e(10), 1692e(12) (in part), and 1692g(b).

Dated at Milwaukee, Wisconsin, this 23rd day of August, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE